(15 App. Div. 386.)

BRADLEY & CURRIER CO., Limited, v. WARD et al.

(Supreme Court, Appellate Division, First Department. March 5, 1897.)

ASSIGNMENTS—UNACCEPTED ORDER—MECHANICS' LIENS.

An order drawn by a building contractor on the owner in favor of a subcontractor, payable out of an unearned installment of the contract price, in payment of a valid claim, is an equitable assignment pro tanto of such installment, though not accepted, and is entitled to priority over a mechanic's lien filed after the owner has been notified of the order; and it is not affected by Laws 1896, c. 915, providing that an order drawn by a contractor shall not be valid until filed, the statute having been enacted after the order was given, but before the installment had been earned.

Ingraham, J., dissenting.

Action by the Bradley & Currier Company, Limited, against Maurice T. Ward and another. A verdict was directed in favor of plaintiffs, and defendant moves for a new trial on exceptions ordered to be heard in the first instance in the appellate division. Denied.

The action is brought to recover a balance of $472, upon an order drawn by Henry Taylor, a builder, upon the defendants, payable out of the third payment, when due, upon a building contract between Taylor and the defendants, for materials furnished by the plaintiff to Taylor, and used in the buildings erected under said contract. On January 3, 1896, Taylor gave the plaintiff an order on the defendants for $1,472, to be paid out of the third payment, when due under the contract, upon which order the defendants paid $1,000, leaving unpaid the amount sued for in this action. Although such payment was made, a question was raised by the pleadings and proof as to whether the defendants accepted the order, and, on making the payment of $1,000, promised to pay the balance. By the terms of the contract, the third payment was to become due when the houses were completed, which was on June 2, 1896. On February 24, 1896, about four months before the houses were completed, two mechanics' liens, aggregating $687.68, were filed against the premises; and in satisfying those liens, after the buildings were completed, the defendants expended as much money as was due the contractor under the third payment.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Henry K. Davis, for appellants.
Austin E. Pressinger, for respondent.

O'BRIEN, J. The order given by the contractor to the plaintiff upon the defendants was prior in point of time to the filing of the mechanics' liens, though it is conceded that both by some months antedated the time when the third payment became due. No request was made to go to the jury upon the question of the acceptance of the order, and, even if we regard the testimony as conflicting, a verdict having been directed, it must be assumed that this conflict was resolved in plaintiff's favor. The question, therefore, presented upon this appeal, is whether the rights of the plaintiff under the order take precedence over the rights of the lienors in and to the third payment under the contract. The plaintiff contends that the order given to it by Taylor upon the defendants constitutes an equitable assignment of the amount of the order in favor of the plaintiff, and cannot be affected by any liens filed after the giving of the order. On the other hand, the defendants maintain that the order cannot take precedence of mechanics' liens regularly filed months

before the third payment became due.    We do not regard this as any longer an open question.    In Lauer v. Dunn, 115 N. Y. 408, 22 N. E. 270, it is said:

"If, before any liens were filed, the contractor had been paid, or had assigned his interest in the fund, in good faith and for a valuable consideration, in payment of a claim of the subcontractor, and the owner is notified, no subsequent liens could operate to affect the owner with any further liability."

That case is sought to be distinguished by the fact there appearing, that the order on the owner was given by the contractor the day after the houses were completed and his money was earned, and that the liens were filed a few days after the order was given, and therefore after the houses were completed.    This suggestion is answered in Stevens v. Ogden, 130 N. Y. 187, 29 N. E. 229.    It therein appeared that orders were given on a payment which was not due to the contractor until after such orders were given.    After the payment was due to the contractor, and within the time allowed by the mechanic's lien law, a lien was filed, and the question was thus directly presented as to the priority between the orders and the lien.    It was therein held that if, before notice of the lien is filed, the contractor assigns to a creditor, in payment of his debt, the whole or any portion of the moneys due or to become due on his contract, the assignor is entitled to the same in preference to the lienor; and in the course of the opinion it is said:

"Anterior to this act (chapter 342, Laws 1885,—general mechanic's lien law of this state) the laborer or material man has no preferential right to be paid for his labor or material out of the sum which is due from the owner of the building to the contractor, but stands in the same position as other creditors.    He may subject the debt to a lien in his favor on filing a notice and taking the proceeding prescribed by the act.    But if, before this has been done, other creditors, pursuing the usual remedies for the collection of debts, have acquired a legal or equitable right to have the debt applied in satisfaction of their claim, the right is not overreached by liens subsequently filed under the act, unless priority is given by the provisions of the act itself. * * * There is no provision in the statute forbidding a contractor to pay his creditors out of the money due him from the owner, to the exclusion of laborers and material men who have not filed liens.    This may be an omission, but, if so, it can only be supplied by the legislature, for the courts cannot extend these purely statutory rights beyond the terms of the statute by which they are created."

This case has been cited and approved in Mack v. Colleran, 136 N. Y. 620, 32 N. E. 604; Tubridy v. Wright, 144 N. Y. 522, 39 N. E. 640; Beardsley v. Cook, 143 N. Y. 150, 38 N. E. 109.

We have examined the cases relied upon by the defendants of Post v. Campbell, 83 N. Y. 279, and Hilton Bridge Const. Co. v. New York Cent. & H. R. R. Co., 145 N. Y. 390, 40 N. E. 86.    All that the court decided in the latter case was that, where the plaintiff's cause of action depended upon payments by the owner of premises to the contractor before they were due by the terms of the contract, an order was proper bringing in the contractor as a party for the purpose of determining the rights of all the parties.    While the only question in that case was as to whether in such an action the contractor was a proper party, there is a statement in the opinion, on which the defendants rely, to the following effect: "Under the lien act of 1885 (chapter 342) it has been held in this court that where the owner has made payments to his contractor, although without fraud

or collusion, before they are due, under the terms of the contract, such payments cannot be allowed to the owner" (citing Post v. Campbell, supra, as the authority for this proposition). A reference to the latter case, however, will show that it involved the construction of the lien law applicable to Kings and Queens counties, which act provided for disallowing, as against lienors, any payment made "by collusion, for the purpose of avoiding the provisions of this act, or in advance of the terms of any contract." As therein said: "We think that the intention of this provision was to exclude payments made either by collusion or in advance of the terms of the contract." The lien law applicable to the city of New York, which was in existence at the time of the filing of the liens against the defendants' property, differs from the act relating to Kings and Queens counties, in that it recites that a lien shall not be defeated where an owner "shall, for the purpose of avoiding the provisions of this act, or in advance of the terms of any contract, pay by collusion any money or valuable thing on said contract," etc. Laws 1885, c. 342, § 2, as amended by Laws 1895, c. 673. Under this act, the payment is no protection to the owner if collusively made in advance of the time fixed by the contract, while the language of the act involved in the case of Post v. Campbell was construed to mean "that payments made by collusion, for the purpose of evading the act, constitute one class of payments to be disallowed, and payments made in advance of the terms of the contract constitute another class."

The good faith of the drawing of the order in suit, and the delivery thereof to the plaintiff, in payment of a bona fide debt, are not questioned, nor is there any dispute about the same having been presented to the owner for payment before any liens were filed against the property. Under the authorities cited, therefore, the order was an equitable assignment pro tanto of the third payment; and, as there was no prior claim, the same became a first charge upon the fund whenever that became due. The defendants were charged with notice thereof, and were bound to reserve sufficient to pay the order in full. If they had any doubt upon this question, instead of resolving it against the plaintiff, they might well have required the matter to be litigated between the plaintiff and the lienors. They undertook, however, to determine for themselves the legality or correctness of the claims under the liens, and to pay the same out of the contractor's moneys without his consent, and without a judicial determination that the claimants were entitled to be so paid. Notwithstanding this fact, if they were correct in their view that they had the right to pay the lienors in preference to the plaintiff, they would be entitled to a ruling, because directly presented, upon that question. As we have said, however, upon the authorities bearing upon the general mechanic's lien law as it existed when the rights here involved accrued, we must regard it as settled law that an order drawn on an owner by a contractor, payable out of a particular fund, and delivered to a subcontractor in payment of a valid claim, takes precedence over liens filed after the owner has been notified of the existence of such order. It is unnecessary for us to determine the construction to be given to the

mechanic's lien law as now amended by chapter 915 of the Laws of 1896, because the rights of the parties are fixed by the law as it was when the questions affecting such rights arose, which was prior to the latest amendment referred to.

We think, therefore, that the action of the court below in directing a verdict in plaintiff's favor was right, and that the exceptions should be overruled, and judgment ordered for the plaintiff, with costs.

VAN BRUNT, P. J., and WILLIAMS and PATTERSON, JJ., concur.

INGRAHAM, J. (dissenting). I am unable to concur with Mr. Justice O'BRIEN in the conclusion at which he has arrived. A contract was executed between one Taylor and the defendants, whereby Taylor was to erect and finish some new buildings on Morris avenue, in the city of New York, and whereby the defendants agreed to pay Taylor the sum of $4,665, in three payments, the third of which payments was $2,000, and was to be paid "when all work is completely finished according to plans and specifications and to the entire satisfaction of the architect." This contract was dated August 6, 1895. On January 3, 1896, Taylor gave to the plaintiff an order for $1,472, "for materials furnished and to be furnished to your house on Morris avenue and 161st street, and deduct the same out of my third payment on contract when due." The plaintiff caused this order to be presented to the defendants, and asked Mr. Ward to accept it. To that Mr. Ward replied that there was no necessity of accepting the order, but, when the person who presented the order to Ward was asked whether he did not remember that Ward said that he would not accept the order, the witness said that he did not remember. Ward testified that he refused to accept the order, and that he did not recognize the order from the fact that there were so many things to be done, but that he thought he was safe in giving him a thousand dollars on account at that time. This thousand dollars was paid on the 14th of January, 1896, for which the plaintiff gave receipt for a thousand dollars "on account of Taylor's carpenter contract on houses on Morris avenue." Nothing is said in the receipt given for that thousand dollars about this order, nor did Ward in any way accept it. When this order was given, and when it was presented to Ward, the contract had not been completed and the third payment was not due. On the 2d of June, 1896, nearly five months after the order was given, the contract was completed, the architect's certificates given, and Taylor became entitled to his third payment. Prior, however, to this time, but subsequent to the delivery of the order, two mechanics' liens had been filed, aggregating $687.68. The question presented on the trial was whether or not these mechanics' liens were entitled to precedence over this unaccepted order given by Taylor to the plaintiff, about five months before the third payment to which the order referred became payable. There is no evidence as to the amount of work that had been done by Taylor at the time this order was presented, nor when the work

was actually completed by Taylor. The contract, however, provides that the third payment should be due when all the work is completely finished; and as it does not appear that such work was finished prior to the date of the architect's certificate, which was June 2, 1896, and as the defendant testified that he refused to accept the order because the carpenters were very slow in getting the work done, I think it clear that at the time the order was granted the work itself, which would entitle Taylor to the money, had not been completed. We have thus an order to pay, for work to be done in the future, a sum of money, to be paid for the doing of the work, not accepted by the persons who were bound to pay the money when the work was completed, and where no obligation existed on the part of the owners of the property to pay. Its effect, as an equitable assignment of such an amount when due, is to be considered as between such equitable assignees and lienors who filed mechanics' liens, which were also filed prior to the completion of the work. By the mechanics' lien law in force at the time this order was given (section 1, c. 342, Laws 1885) it is provided that any person who shall thereafter perform any labor or services, or furnish any materials which have been used or which are to be used in the erection of any house, with the consent of the owner or his agent, or any contractor, or subcontractor, or any other person contracting with such owner to erect any building, may, upon filing the notice of lien prescribed in the fourth section of the act, have a lien for the principal and interest of the price and value of such labor and materials upon such house, and upon the lot, premises, parcel, or farm of land upon which the same may stand; with the proviso that in no case shall such owner be liable to pay, by reason of all the liens filed pursuant to the act, a greater sum than the price stipulated and agreed to be paid in such contract, and remaining unpaid at the time of the filing of such lien. The statute thus provides for a lien upon the land to the extent of the price stipulated and agreed to be paid in such contract, and remaining unpaid at the time of the filing of such lien. When these mechanics' liens were filed, therefore, they became liens upon the land to the extent of the amount agreed to be paid in the contract, and remaining unpaid at the time of the filing of the liens; and, to overrule these exceptions, we must hold that an order upon the owner prior to the time that the work had been done, which would entitle the contractor to a payment, can take precedence over the liens of a mechanic who had filed his lien subsequent to the delivery of the order, but prior to the time that the work had been done for which the payment was to be made, and prior to the time that the payment became due.

It does not seem to me that either of the cases relied on by the plaintiff determines this question. The case of McCorkle v. Herrman, 117 N. Y. 304, 22 N. E. 948, was upon a demurrer to an answer which alleged that liens were filed prior to the commencement of the action; and the court held that such an allegation in the answer was not a defense to an action to recover, by a receiver in supplementary proceedings, moneys which were due at the time of the commencement of the proceedings, the court expressly limiting its deci-

sion by saying: "Our decision relates to a case of money due or earned at the time proceedings were instituted." In Lauer v. Dunn, 115 N. Y. 405, 22 N. E. 270, the order was delivered, after the completion of the buildings, for a portion of a sum remaining then due, and in determining that case the court said:

"The question, therefore, here is whether the order which the contractor gave to these plaintiffs amounted in law to an assignment pro tanto of the fund in the owner's hands. We think that it did. When the building was completed the contractor had earned his moneys, though he might not be able to enforce payment thereof until thirty days had expired. That provision for time we look upon as one of grace to the owner. He was not bound to wait, but he had the right to elect to do so. During the running of that time other parties than the contractor might, through the filing of their notices of lien, acquire the right to be paid from the fund, but that consideration is not one which influences the determination of the case. If, before any liens were filed, the contractor had been paid, or had assigned his interest in the fund, in good faith and for a valuable consideration, in payment of a claim of the subcontractor, and the owner is notified, no subsequent liens could operate to affect the owner with any further liability. * * * The effect of the giving of the order in question was to substitute the plaintiffs as the recipients pro tanto of the balance payable to the contractor. Concededly it was earned under the contract, and the postponement of its payment, by the exercise of the owner's option, did not make it any the less a debt to the contractor, however possible for other legal claims to it to arise meanwhile."

In the case of Brill v. Tuttle, 81 N. Y. 458, the order was to pay to the plaintiff $300, "and charge the same to our account for labor and materials performed and furnished in the repairs and alterations of the house." There was a dispute in the evidence as to the amount due at the time of the date of the order, and the question was submitted to the jury, with the instruction that the plaintiff was entitled to recover any money in arrears on the 1st of September, 1876, the day of the presentation of the order to him, and at any time thereafter before the commencement of the suit, on the account mentioned in the order, on the 1st of September. The evidence showed that the job was nearly completed at the time the order was drawn, and the amount due from the defendant to the drawers, at or after the time of the presentation of the order, on the designated account, was established by the verdict of the jury at $243. For that sum the plaintiff had judgment, and that judgment was sustained. There was no question as to the rights of others who had intervened, and who would be entitled to the sum because of any lien which had attached to the premises upon which the house was built, either prior or subsequent to the granting of the order.

In the case of Stevens v. Ogden, 130 N. Y. 185, 29 N. E. 229, it appeared that on January 26, 1887, one Anderson was entitled to receive the sum of $1,545 under a contract with one Reynolds, the owner in fee of certain property, for repairs to the building upon such property. On the 15th of November, 1887, Anderson executed and delivered to Ogden & Co. an order on Reynolds, whereby Reynolds was requested to pay to Ogden & Co. $909, and to "charge to account of my contract with you for the carpenter work at 115½ Waverly Place"; and it was held by the Second division of the court of appeals that this order, drawn by the contractor on the owner in fee, by its terms payable out of a sum due or to become due from the owner under his contract, when such order is given and accepted in

payment of the debt, operates as an assignment pro tanto of that fund; and the court, then citing a portion of the opinion of the court of appeals in McCorkle v. Herrman, supra, held that that case was decisive of the question presented. The appeal was from a judgment of the general term reducing the amount allowed to Ogden & Co. to $400, it appearing in the evidence that that sum was the value of the lumber sold by Ogden & Co., and used in the repairs to the building owned by the drawee named in the order. The only question presented to the court was whether Ogden & Co. were entitled to the whole $900, or only to the $400, which represented materials used in the building. The court held that the judgment of the special term awarding the whole $900 was correct. No point was made upon the appeal that the order was given before the work was done, and that a mechanic's lien was filed after the completion of the work, and when the contractor was entitled to receive the money which he had by the order directed the owner to pay to Ogden & Co. The Second division of the court of appeals, in the case there cited, does not notice the express limitation in the McCorkle Case, as relating to a case of money due or earned at the time the proceedings were instituted.

We have here a case of an equitable assignment of money to grow due for work to be thereafter performed or materials thereafter furnished, which sum never became due to the contractor until after the mechanics' liens were filed, and until after the amendment of the law of 1885, hereafter noted. By chapter 915 of the Laws of 1896, taking effect May 27, 1896, it is provided that the liens provided for by the act shall be preferred as prior liens to any conveyance, judgment, or other claim which was not docketed or recorded at the time of filing the notice prescribed in the fourth section of the act; and that "no assignment of any contract for the performance of any labor or services or the furnishing of any materials for any of the purposes specified in the first section of this act; nor of the moneys due or to become due therefor, nor of any part thereof, nor any order drawn by any contractor or subcontractor for the payment of such moneys shall have any force or validity until the contract, or a statement containing the substance thereof, and such assignment, or copies thereof, or a copy of such order, shall be filed in the office of the clerk of the county wherein the premises are situated upon which such labor or services have been or are to be performed, or such materials have been or are to be furnished, and may then take effect and be enforced as of the time of such filing." Now, at the time of the passage of the act, no sum of money had been earned by this contractor, or was then due or payable to him. He had an order which would operate as an equitable assignment of such sum of money as should subsequently become due and payable under the contract, but no money was earned, or was due and payable to the plaintiff, under that order, or to the drawer of the order. This statute then took effect, and it is there expressly provided that any order drawn by any contractor or subcontractor, for the payment of this money, should not have any force or validity until a copy of such order should be filed in the office of the clerk wherein the prem-

ises are situated upon which work is to be done or materials furnished. When this act took effect no right had accrued to the drawer of the order as against the defendant, the owner. He had not agreed to pay the order, and whether or not anything would become due to the plaintiff would depend upon the completion of the contract by the contractor or his last payment becoming due. Under the provisions of this statute, a filing of a copy of this order was made a condition precedent to its obtaining a priority over liens filed in pursuance of the statute, which by such filing became liens upon the property to the extent of the amount due or to grow due to the contractor under the contract. It is quite clear that if the right of the plaintiff had become fixed prior to the passage of this act, if he had prior to that time become entitled to any sum of money from the defendant under his order, or if the contractor had become entitled to any sum of money from the owner upon which this order could operate as a pro tanto assignment, the provisions of this act would not have affected the right of the plaintiff to receive what was then due to him; but when this statute was passed nothing was due to either the contractor or the plaintiff as an assignee of the contractor. His right to receive anything depended upon the completion of the building by the contractor; and as there was nothing then due to either the contractor or the plaintiff, and as it does not appear that at that time there had been any money either earned or payable to the contractor upon which this order could operate, I think the provisions of the statute affected it; and as between liens filed under the provisions of the act and such an order for the payment of a sum of money to grow due for work to be thereafter performed, to entitle the order to priority over the liens, such order must be filed in accordance with the provisions of the act.

I think, therefore, upon the evidence as it stood upon the trial, the direction of a verdict in favor of the plaintiff was error, and that the exceptions should be sustained, and a new trial ordered, with costs to the appellants to abide the event.